Devon K. Roepcke (SBN 028495)
LAW OFFICES OF DEVON K. ROEPCKE
170 Laurel Street
San Diego, CA 92101
Tel: 619-940-5357
Email: droepcke@lawdkr.com

Patricia E. Ronan (SBN 029009)
PATRICIA E. RONAN LAW, L.L.C.
P.O. Box 55341
Phoenix, AZ 85078-5341
Tel: 619-458-2505
Email: patricia@ronanesq.com

**Attorneys for:** Plaintiff, Danielle Nagy

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Danielle Nagy; <br><br> Plaintiff, <br> v. <br><br> Dr. Keith D. Kennedy; <br> Dana Park Dental, LLC; <br> Power Ranch Dental, LLC; and <br> DOES 1-100; <br><br> Defendants. | **Case No.** <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL FOR:** <br><br> 1. **Failure to Properly Pay Overtime Wages in Violation of the FLSA** <br> 2. **Retaliation in Violation of the FLSA** <br> 3. **Violation of Arizona Wage Laws** <br> 4. **Whistleblower Retaliation in Violation of the Arizona Employment Protection Act** <br> 5. **Wrongful Termination in Violation of Public Policy** |

Plaintiff, Danielle Nagy, by and through her attorneys, for causes of action against Dr. Keith D. Kennedy, Dana Park Dental, LLC, and Power Ranch Dental, LLC, alleges as follows:

**PARTIES**

1. Plaintiff, Danielle Nagy (hereinafter "Ms. Nagy") is a citizen and resident of the State of Arizona, County of Maricopa. At all relevant times, Ms. Nagy was an employee of Defendants Dr. Keith D. Kennedy, Dana Park Dental, LLC, and Power Ranch Dental, LLC.

2. Ms. Nagy is informed and believes, and on that basis alleges, that at all relevant times, Defendant Dr. Keith D. Kennedy (hereinafter "Dr. Kennedy") is a resident of and did business in Maricopa County, Arizona, as Dana Park Dental, LLC, and Power Ranch Dental, LLC.

3. Ms. Nagy is informed and believes, and on that basis alleges, that at all relevant times, Defendant Dana Park Dental, LLC (hereinafter "DPD"), was a limited liability company organized under the laws of the of the State of Arizona, with its principal place of business located at 2373 E Baseline Rd #101, Gilbert, AZ 85234.

4. Ms. Nagy is informed and believes, and on that basis alleges, that at all relevant times, Defendant Power Ranch Dental, LLC (hereinafter "PRD"), was a limited liability company organized under the laws of the of the State of Arizona, with its principal place of business located at 7400 S Power Rd #128, Gilbert, AZ 85297.

5. The identity of each DOE 1-100 is unknown to Ms. Nagy, who sues under those fictitious names. Ms. Nagy will amend this Complaint to state each DOE's true name and capacity when they become known. Ms. Nagy is informed and believes, and upon that basis alleges, that each such DOE is in some way responsible for the events alleged herein.

2
_____
**COMPLAINT**

6. Ms. Nagy is informed and believes, and upon that basis alleges, that each Defendant was acting partly within the scope and course of their employment, and was acting with the knowledge, permission, consent, and ratification of every other Defendant.

7. Ms. Nagy is informed and believes, and upon that basis alleges, that each DEFENDANT was the alter ego of each other. Ms. Nagy is informed and believes, and upon that basis alleges, that Defendants shared employees, funds, and physical assets, such that their separate corporate existence should be disregarded.

## JURISDICTION

8. This court has jurisdiction over the subject matter of this action under 29 U.S.C. §217 and 28 U.S.C. §1331. Ms. Nagy brings claims arising under §§ 7(a)(1), and 15(a)(3) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207(a)(1), and 215(a)(3).

9. This court also has supplemental jurisdiction over Ms. Nagy's state law claims as are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

10. Additionally, the Court has personal jurisdiction over the Defendants, since Defendants DPD and PRD are organized in and have their principal places of business in Arizona and Dr. Kennedy is a resident of the state.

## VENUE

11. Venue is proper in this Division under 28 U.S.C. §1391(a) as the events Ms. Nagy complains of occurred in Maricopa County, Arizona.

## GENERAL ALLEGATIONS

12. Ms. Nagy completed a professional educational program to become a dental assistant in 2014.

13. In January of 2015, Ms. Nagy was hired by DPD as a dental assistant. This was her first job after finishing her educational training and she was very excited to be applying the skills she learned.

_____
**COMPLAINT**

14. DPD and PRD are dental practices in Gilbert, Arizona owned, operated, and controlled by Dr. Keith D. Kennedy (hereinafter "Dr. Kennedy").

15. Many of the same staff work for both DPD and PRD. One such staff member is Paola Fann (hereinafter "Ms. Fann"), who works as the Office Coordinator for both practices.

16. Although Ms. Nagy was hired by DPD, she also worked at PRD and was on payroll for both practices.

17. Defendants were joint employers of Ms. Nagy.

18. Even though Ms. Nagy was hired as a dental assistant, Ms. Fann trained her on how to perform front office tasks, and moved her to a front office position.

19. Ms. Nagy's typical front office duties included scheduling, ordering office supplies, treatment planning, and continuing care calls.

20. Ms. Nagy was also trained on how to enter insurance payments and adjustments, but this job was usually done by Ms. Fann.

21. Ms. Nagy was expected to do whatever Ms. Fann asked of her, even when she was not on duty. Such off-duty work included making a Facebook page and website for DPD, calling employees about their schedules, texting the doctors about their work loads, returning to the office to retrieve documents or vendor phone numbers for Ms. Fann, checking to see why the office alarm was going off, and letting contractors into and out of the office while it was closed. Ms. Nagy was not allowed to clock in for her off-duty work, and thus was never compensated for any of this time.

22. During her employment, Ms. Nagy was typically scheduled to work between 45 and 60 hours per week.

23. Regardless of how many scheduled hours Ms. Nagy worked, she would be paid for working 40 hours at regular time, and 5 hours of overtime pay.

24. Ms. Nagy's hourly pay rate was $15.00, and overtime was paid at time and a half, or $22.50 per hour.

25. Ms. Fann explained to Ms. Nagy that she had practice of "holding" additional hours to avoid paying Ms. Nagy overtime. Under this practice, Ms. Nagy would use Defendants' timekeeping system to track her hours, but Ms. Fann would override Ms. Nagy's time entries to reduce her compensated hours to 45 per week and to "hold" any additional hours. These "held" hours were carried forward and if there was a week with holiday or other day Ms. Nagy had off, which made her total hours for the week under 45, Ms. Fann would override the timekeeping system to credit the "held" hours for Ms. Nagy's day off, as if she had worked that day. This practice allowed Defendants to avoid paying Ms. Nagy overtime because her "held" hours would be paid out at her regular rate.

26. The effect of Defendants "holding" Ms. Nagy's time and requiring her to do work off the clock, was that she worked more hours than she was paid for. As such, Ms. Nagy was deprived both the more remunerative overtime pay for the "held" hours, and never received even regular pay for the off-duty hours she worked for Defendants.

27. From the beginning, Ms. Nagy did not believe that Ms. Fann's "holding" of hours and making her work off-duty was fair, or legal, but she was concerned that if she complained, she would suffer retaliation.

28. On or about October 19, 2016, one of the dentists at DPD, Dr. Alex Hatch, (hereinafter "Dr. Hatch") approached Ms. Nagy because he noticed that his productivity account showed approximately $3,000 in adjustments that he did not think were appropriate. Although Ms. Nagy had not made the adjustments, she agreed to look into them.

29. Ms. Nagy investigated the adjustments, and discovered what she believed to be extensive insurance fraud, committed by Ms. Fann. The incidents she discovered included the waiving of deductibles, coinsurance and copayments; billing for services not rendered; misrepresentation of dates of service; misrepresentation of services performed and up-charging insurance fee schedules.

30. On information and belief, Ms. Fann had a practice of adjusting and falsifying information in the system because if DPD achieved a certain revenue benchmark in a given month, Ms. Fann would receive a bonus.

31. Ms. Nagy told Dr. Hatch what she discovered.

32. Dr. Hatch encouraged Ms. Nagy to go to DPD's owner, Dr. Kennedy, with her findings, but Ms. Nagy still feared retaliation if she reported what she found. Eventually Dr. Hatch persuaded her to speak up.

33. On or about November 1, 2016, Ms. Nagy met Dr. Kennedy for lunch outside the office to discuss what Ms. Nagy had discovered about billing irregularities. Ms. Nagy and Dr. Kennedy met for over an hour, during which Ms. Nagy told Dr. Kennedy everything she knew about Ms. Fann's conduct. Ms. Nagy showed Dr. Kennedy a folder that contained various documents demonstrating the widespread insurance fraud.

34. Ms. Nagy also informed Dr. Kennedy about Ms. Fann's system to avoid paying Ms. Nagy overtime by paying her extra hours at regular rates on Ms. Nagy's days off. Dr. Kennedy later acknowledged that due to this practice, Defendants owed Ms. Nagy for her unpaid hours.

35. Defendants made no investigation and took no other action to address Ms. Nagy's unpaid wages or the insurance fraud she discovered.

36. On November 4, 2016, just three days after Ms. Nagy reported the illegal activities, Defendants terminated her employment.

## FIRST CAUSE OF ACTION

**(Failure to Properly Pay Overtime Wages in Violation of the FLSA Against all Defendants)**

37. Ms. Nagy incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

38. Ms. Nagy was a nonexempt employee under the FLSA.

39. Defendants failed to comply with 29 U.S.C. § 201, et seq., in that Plaintiff often worked in excess of 40 hours per week, but was not paid for those excess hours at the compensation rate required by the FLSA.

40. Defendants' failure to pay overtime to Ms. Nagy was willful. Defendant did not act in good faith in failing to pay appropriate overtime compensation due. When the wage discrepancy was brought to Defendants' attention, Defendants failed to investigate the allegations or compensate Ms. Nagy for any of her underpaid wages.

41. Ms. Nagy has suffered economic damages as a result of Defendants' unlawful compensation practice and is entitled to statutory remedies provided pursuant to the FLSA, including but not limited to, unpaid overtime compensation, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(Retaliation in Violation of the FLSA Against all Defendants)**

42. Ms. Nagy incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

43. Ms. Nagy was an employee of Defendants.

44. Ms. Nagy raised concerns with management related to Defendants' failure to pay overtime, a protected act under the FLSA.

45. Three days after Ms. Nagy reported her concerns, Defendants terminated her employment.

46. Ms. Nagy's termination was motivated by Defendants' desire to retaliate against her for seeking to assert her rights to hourly and overtime pay for every hour worked under the FLSA.

47. Defendants violated the FLSA when they terminated Ms. Nagy's employment in retaliation for her complaints about Defendants' failure to pay overtime.

**COMPLAINT**

48. Ms. Nagy is damaged as a result of this retaliation.

49. Ms. Nagy has suffered economic, reputational, and emotional damages as a result of Defendants' unlawful retaliatory termination and is entitled to such legal and equitable relief as is appropriate to effectuate the purpose of 29 U.S.C. §215(a)(3), including but not limited to, lost wages, emotional distress damages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION

**(Violation of Arizona Wage Laws, A.R.S. §23-355, Against all Defendants)**

50. Ms. Nagy incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

51. Defendants wrongfully withheld Ms. Nagy's wages.

52. Despite a request to have improperly withheld wages paid, Defendants have willfully, intentionally and unreasonably failed and refused to pay wages

53. Ms. Nagy is entitled to treble wages pursuant to A.R.S. §23-355, plus attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**(Whistleblower Retaliation in Violation of the Arizona Employment Protection Act, A.R.S. § 23-1501, Against all Defendants)**

54. Ms. Nagy incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

55. On or about November 1, 2016, and on occasions before then, Ms. Nagy reported to Dr. Kennedy and Dr. Hatch her good faith belief that Defendants' were engaging in insurance fraud, in violation of A.R.S. §20-466.01.

56. Likewise, Ms. Nagy reported to Dr. Kennedy and Dr. Hatch her good faith belief that Defendants were failing to pay full wages, in violation of A.R.S. §23-350, *et seq.*

57. Dr. Kennedy and Dr. Hatch were each in a position to investigate the concerns raised by Ms. Nagy, but neither did so.

58. On or about November 4, 2016, Defendants terminated Ms. Nagy's employment in retaliation for making her report, in violation of the Arizona Employment Protection Act.

59. As a legal and proximate result of Defendants' actions, Ms. Nagy has suffered special and general damages in an amount to be proven at trial.

60. Defendants' actions were willful, and taken in knowing disregard of Ms. Nagy's rights, and engaged in aggravated, outrageous, fraudulent and malicious conduct, entitling Ms. Nagy to exemplary and punitive damages.

## FIFTH CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy Against all Defendants)**

61. Ms. Nagy incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

62. In terminating Ms. Nagy's employment, Defendants violated the public policy of the State of Arizona.

63. As a legal and proximate result of Defendants' actions, Ms. Nagy has suffered special and general damages in an amount to be proven.

64. Defendants' actions were willful, and taken in knowing disregard of Ms. Nagy's rights, and engaged in aggravated, outrageous, fraudulent and malicious conduct, entitling her to exemplary and punitive damages.

## DEMAND FOR JURY TRIAL

24. Ms. Nagy demands a trial by jury.

///
///
///
///

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Nagy prays for relief from this honorable Court as follows:

1. For special and general damages in an amount to be proven;
2. For all fines, penalties, interest, and liquidated damages as provided by law;
3. For treble wages pursuant to A.R.S. §23-355;
4. For punitive and exemplary damages, to punish and make an example of Defendants;
5. For attorneys' fees and costs;
6. For prejudgment and post-judgment interest in accordance with applicable law; and
7. For such other and further relief as this honorable Court may deem just and proper.

DATED: JUNE 1, 2017　　　　　　　　　Respectfully submitted,

**LAW OFFICES OF DEVON K. ROEPCKE, PC**

/s Devon K. Roepcke
Devon K. Roepcke (SBN 028495)

**PATRICIA E. RONAN LAW, LLC**

/s Patricia E. Ronan
Patricia E. Ronan (SBN 029009)

Attorneys for Plaintiff